AO 91 (Rev. 02/09) Criminal Complaint

# United States District Court
### for the
### Western District of New York

United States of America

v.

**JOSEPH STEVENS**

*Defendant*

Case No. 21-mj-5112

FILED MAY 19 2021 MARY C. LOEWENGUTH, CLERK WESTERN DISTRICT OF NY

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

In or about February 2021, in the Western District of New York and elsewhere, the defendant, JOSEPH STEVENS:

(1) did knowingly embezzle, steal, and convert to his use money of the United States;

(2) having devised and intended to devise a scheme to defraud and to obtain money by means of false and fraudulent pretenses and representations, did cause to be transmitted by means of wire communications in interstate commerce, writings, signs, and signals, for the purpose of executing such scheme and artifice, with such violation occurring in relation to, and involving any benefit authorized, transported, transmitted, transferred, disbursed, and paid in connection with, a presidentially declared major disaster or emergency; and

(3) did disclose and use the social security number of any person in violation of the laws of the United States;

all in violation of Title 18, United States Code, Sections 641 and 1343, and Title 42, United States Code, Section 408(a)(8).

This Criminal Complaint is based on these facts:

☒ Continued on the attached sheet.

*Complainant's signature*

Michael Nunziato, Special Agent, U.S. DOL-OIG
*Printed name and title*

Sworn to before me and signed telephonically.

Date: May 19, 2021

*Judge's signature*

City and State: Buffalo, New York

HON. MICHAEL J. ROEMER, USMJ
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Michael Nunziato, being duly sworn, depose and say:

1. I am a Special Agent with the United States Department of Labor, Office of Inspector General, Office of Investigations - Labor Racketeering and Fraud ("DOL OIG, OI-LRF"), currently assigned to the Buffalo Field Office. Prior to joining the Department of Labor, I served as a Special Agent with the United States Department of State, Diplomatic Security Service ("DSS"). I have been employed as a Special Agent for the United States Government for 11 years. I completed the Diplomatic Security Training Center's Basic Special Agent Course and the Federal Law Enforcement Training Center's Criminal Investigator Training Program where I received specialized training in conducting investigations of federal offenses. As a part of my official duties, I investigate violations of the United States Code as they relate to, among other areas, benefit fraud, fraud perpetrated against the U.S. Government, and identity theft.

2. This affidavit is made in support of an application for a criminal complaint charging **JOSEPH STEVENS** ("STEVENS") with theft of money of the United States, wire fraud, and social security fraud, in violation of Title 18, United States Code, Sections 641 and 1343, and Title 42, United States Code, Section 408(a)(8).

3. The statements contained in this affidavit are based upon my investigation and personal knowledge, my interviews with witnesses, my review of official documents and records, information communicated to me by other law enforcement agents and government

officials, and my training and experience as a Special Agent with the Department of State and Department of Labor. Because this affidavit is being submitted for the limited purpose of securing a criminal complaint, I have not included each and every fact known to me concerning this investigation.

I. **BACKGROUND**

    A. **Background on Unemployment Insurance Benefits and the COVID-19 Pandemic**

4. At all times relevant to this affidavit, Unemployment Insurance ("UI") was a state-federal program that provided monetary benefits to eligible lawful workers. Although each state's state workforce agency (an "SWA") administers its own respective UI program, all SWAs must do so in accordance with federal laws and regulations. UI payments (benefits) are intended to provide temporary financial assistance to lawful workers who are unemployed through no fault of their own. Each state sets its own additional requirements for eligibility, benefit amounts, and length of time benefits can be paid. Generally, UI weekly benefit amounts are based on a percentage of the recipient's earnings over a base period. In New York State, the New York Department of Labor ("NYS DOL") administers the UI program.

5. On March 13, 2020, the President declared the ongoing Coronavirus Disease 2019 ("COVID-19") pandemic of sufficient severity and magnitude to warrant an emergency declaration for all states, tribes, territories, and the District of Columbia pursuant to section 501 (b) of the Robert T. Stafford Disaster Relief and Emergency Assistance Act, 42 U.S.C. § 5121-5207 (the "Stafford Act").

6. On March 18, 2020, the President signed the Families First Coronavirus Response Act ("FFCRA") into law. The FFCRA provides additional flexibility for state UI agencies and additional administrative funding to respond to the COVID-19 pandemic.

7. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was signed into law on March 27, 2020. It expands states' ability to provide UI for many workers impacted by COVID-19, including for workers who are not ordinarily eligible for UI benefits. The CARES Act provided for three new UI programs: Pandemic Unemployment Assistance ("PUA"); Federal Pandemic Unemployment Compensation ("FPUC"); and Pandemic Emergency Unemployment Compensation ("PEUC").

8. The first program, PUA, provides for up to 39 weeks of benefits to individuals who are self-employed, seeking part-time employment, or otherwise would not qualify for regular UI or extended benefits under state or federal law or PEUC under section 2107 of the CARES Act. Coverage includes individuals who have exhausted all rights to regular UI or extended benefits under state or federal law or PEUC. Under the PUA provisions of the CARES Act, a person who is a business owner, self-employed worker, independent contractor, or gig worker can qualify for PUA benefits administered by NYS DOL if he or she previously performed such work in New York and is unemployed, partially unemployed, unable to work, or unavailable to work due to a COVID-19 related reason. A PUA claimant must answer various questions to establish his/her eligibility for PUA benefits. The claimant must provide his/her name, Social Security Number ("SSN"), and mailing address. The claimant must also identify a qualifying occupational status and COVID-19 related reason for

being out of work. The eligible timeframe to receive PUA under the CARES Act was from weeks of unemployment beginning on or after January 27, 2020 through December 31, 2020.

9. The second program, PEUC, provided for up to 13 weeks of benefits to individuals who have exhausted regular UI under state or federal law, have no rights to regular UI under any other state or federal law, are not receiving UI under the UI laws of Canada, and are able to work, available for work, and actively seeking work. However, states must offer flexibility in meeting the "actively seeking work" requirement if individuals are unable to search for work because of COVID-19, including because of illness, quarantine, or movement restriction. In New York, the eligible timeframe to receive PEUC benefits under the CARES Act was from April 5, 2020 through December 31, 2020.

10. Finally, the third program, FPUC, provides individuals who are collecting regular UI, PEUC, PUA, and several other forms of UI with an additional $600 per week. In New York, the eligible timeframe to receive PEUC was from April 5, 2020 through July 31, 2020.

11. On August 8, 2020, after FPUC expired, the President signed a Presidential Memorandum authorizing FEMA to use disaster relief funds pursuant to Section 408 Other Needs Assistance of the Stafford Act to provide supplemental payments for lost wages to help ease the financial burden on individuals who were unemployed as a result of COVID-19. The "Lost Wages Assistance Program" ("LWAP") served as a temporary measure to provide an additional $300 per week via a total of $44 billion in FEMA funds. The period of assistance

for LWAP was August 1, 2020 to December 27, 2020, or termination of the program, whichever is sooner.

12.     On December 27, 2020, the President signed the Consolidated Appropriations Act, 2021 into law. Part of the Consolidated Appropriations Act, 2021 is the Continued Assistance for Unemployed Workers Act of 2020 (the "Continued Assistance Act"), which among other funding measures, extended certain UI benefits initially created by the CARES Act. For example, the Continued Assistance Act: (1) extended PUA and PEUC benefits to March 14, 2021; and (2) reauthorized and modified FPUC to provide payments of $300 per week for the period between December 26, 2020 and March 14, 2021.

### B.     Filing for Unemployment Benefits in New York

13.     At all times relevant to this affidavit, there were two primary methods for filings for unemployment benefits in New York state: online and by telephone. The application allows New Yorkers to apply just once to receive the correct UI or PUA.

14.     One method for applying for UI in New York is through the NYS DOL website. Each claimant will need to create a NY.gov online account, which allows the claimant to receive updates on the account, register for direct deposit, and communicate with the NYS DOL. This requires the claimant to enter an email address, which New York State then uses to communicate with the applicant. Once the claimant has a NY.gov account, he or she can file a claim through the online portal by submitting their full name, SSN, driver's license or motor vehicle ID number, Alien registration card (if not a U.S. citizen), mailing

address (including city and ZIP code), phone number, bank account and routing number, as well as wage and employment information such as New York State Employer Registration Number, Federal Employer Identification Number ("FEIN"), wage details, net annual income, and employer's full name and address.

15. The other method for filing a claim is by calling the NYS DOL Telephone Claim Center at 1-888-209-8124. For this method, each claimant still must submit the same information identified above for the online application, but the submission is made by telephone.

16. After a claimant applies for unemployment insurance benefits, if eligible, the first payment will generally be made in two to three weeks from the time the claim is completed and processed. If the claimant does not choose to have benefits direct deposited to a bank account, he or she will receive UI benefit payments on a debit card sent via U.S. mail from a third-party processor and administrator for KeyBank in Illinois. KeyBank is also the originating bank for New York and other states. KeyBank not only handles the issuance of debit cards, but also deposits UI benefits into UI claimants' accounts.

17. The debit card accrues the UI benefit payments and can be used like other debit cards and can be used to withdraw unemployment benefits from automated teller machines ("ATM") and MasterCard affiliated banks. The debit card also allows claimants to spend UI directly at retail point-of-sale locations and through online, phone, and mail order purchases.

The bank that provides unemployment insurance debit cards in the state of New York, as well as other states, is KeyBank.

18. Once a claimant has filed a claim for UI benefits, he or she must also certify every week that he or she continues to be unemployed and meets the eligibility requirements in order to continue to receive benefits. This certification process, like the initial application, can be done by telephone via the NYS DOL Telephone Claim Center, or online through the NYS DOL website.

19. In the state of Ohio, the Ohio Department of Jobs and Family Services ("ODJFS") administers the UI program and has an operationally similar claims process to that of NYS DOL. There are two ways to apply for UI benefits in Ohio, these being online or by telephone. As in New York, the claimant must provide a large amount of personally identifiable information, namely SSN, driver's license number, name, address, previous employer information, reason for unemployment, etc. The computer network servers used by ODJFS are located in the state of Virginia.

## II. INVESTIGATION AND FACTUAL BASIS

### A. General

20. In the beginning of February 2021, the DOL OIG, OI-LRF Buffalo Field Office received information from the Western District of New York Probation and Pre-Trial Services ("WDNY Probation") that STEVENS was perpetrating fraud against the UI systems in multiple U.S. States. WDNY Probation explained that they had received information from

STEVENS' sister-in-law and brother with whom he had been living during this time period at their home at an address in Olean, NY. As well as providing a place for STEVENS to live, his brother and sister-in-law provided him use of a Hewlett & Packard ("HP") desktop computer, model 290-p0043w, serial number 2MO01035S. At some point, STEVENS' brother and sister-in-law decided STEVENS could not live with them any longer and asked him to leave.

21.  Part of the reason STEVENS' brother and sister-in-law had STEVENS leave their residence was due to their discovery of multiple UI related notifications and benefit cards from multiple U.S. States being mailed to their address in the names of individuals unknown to them. STEVENS was out on probation due to previous felony bank fraud and tax evasion charges and his brother and sister-in-law believed the UI mailings were the result of new fraudulent activity by STEVENS.

22.  After STEVENS left the residence, STEVENS' brother and sister-in-law continued to receive UI related mail from NYS DOL and other U.S. SWAs. They also received to their address mail from numerous financial institutions in STEVEN's name, including account opening and statement documentation from MetaBank, Go2Bank, TD Bank, PayPal, Visa, and Wells Fargo. According to his sister and brother-in-law, during his entire time staying with them, STEVENS was not employed at all. STEVENS' brother and sister-in-law also examined the Hewlett & Packard desktop computer that they had previously provided to him for use while he lived with them. On the computer, his brother and sister-in-law believe they found further evidence of STEVENS engaging in fraudulent activity

connected to multiple State's UI programs and financial institutions. Upon discovery of this information, STEVENS' brother and sister-in-law decided to provide these mailings and their computer that STEVENS had utilized to WDNY Probation.

23. A search of NYS DOL records show that six UI claims, all in different names, used the mailing address Olean, NY ("Olean Address") where STEVENS was residing with his brother and sister-in-law. A search of Maryland UI records show ten claimant accounts using the Olean Address. Further examination of the Maryland UI records show that the claims originally utilized addresses in Maryland, but shortly after successful opening, the mailing address was changed to the Olean Address indicating likely fraud. All of these accounts were in different names despite using the same Olean Address.

B. **Specific Fraudulent Activity**

24. At the request of WDNY Probation, the Buffalo office of the Department of Homeland Security, Office of Inspector General ("DHS OIG") conducted an analysis of the computer STEVENS' brother and sister-in-law provided to law enforcement; HP desktop computer with serial number 2MO01035S. The initial examination showed that the primary hard drive within the computer is a 500 gigabyte drive with serial number WCC6Z4NPEL1P. Analysis of the hard drive showed numerous internet activity artifacts and email messages involving financial institutions including Wells Fargo, Green Dot, Key Bank, Go2Bank, Olean Area Federal Credit Union, and PayPal. One of the email messages found on the hard drive was from Wells Fargo Online, dated 2/21/2021 to email address buffalojoe055@yahoo.com. The email was a direct deposit notification to account number

ending with 2019 in the amount of $1,183.50 from ODJFS PUA in the name of a specific individual with initials J.M. As explained, ODJFS is the acronym for the Ohio Department of Jobs and Family Services which is the designated State Workforce Agency that administers the UI program for Ohio. According to a separate analysis done by DHS OIG, the email address buffalojoe055@yahoo.com is a registered email address on STEVENS' iPhone mobile device, International Mobile Equipment Identifier ("IMEI") 013981000558417, serial number FCDN80SYFFHG, and containing AT&T SIM card Integrated Circuit Card Identifier ("ICCID") 8901410740496128. This phone was seized from STEVENS' by WDNY Probation during his arrest in the Western District of New York on 2/18/2021.

25. Also at the request of WDNY Probation, DHS OIG conducted an analysis of STEVENS' iPhone mobile device, which contained evidence of UI related fraud activity. In a chat message found on STEVENS' iPhone, STEVENS wrote the following to another individual:

> "this is going to be the policy going forward. The credit union account was closed by my sister in law. I am in the process of opening a new credit union account. No unemployment benefits will go into that account. Cash app deposits are ok. Only deposit from unemployment benefit will be deposited in key or Wells Fargo account".

26. Examination of Wells Fargo records show checking account XXXXXX2019 is in the name Joseph STEVENS using the Olean Address. Additionally, the Wells Fargo banking records confirm the deposit transaction identified in the Wells Fargo email previously described. The dates of the Wells Fargo records range from 11/6/2020 through 3/5/2021. The statement dated 2/5/2021 showed a deposit from ODJFS PUA in the name of J.M. for

the amount of $1,183.50. Also into Wells Fargo checking account XXXXXX2019 was a deposit from ODJFS PUA in the name of a different individual with initials M.M. dated 2/18/2021 for the amount of $5,586.00.

27. ODJFS records included the SSN attributed to J.M. who received UI benefits in Ohio. Commercial database checks show that this SSN is connected to J.M., with a DOB of XX/XX/1985, an address in Missouri, and a specific telephone number. An individual identifying himself as J.M. answered at this telephone number. J.M. then confirmed his identity by providing his last four of his SSN, his address, and date of birth. J.M. explained that he never lived or had a mailing address in Ohio and that he has never applied for UI benefits in the state of Ohio. J.M. denied knowing STEVENS' and affirmed that he never authorized the use of his personal information by anyone for the purpose of obtaining UI benefits in Ohio or elsewhere. J.M. also confirmed that he does not and has never had any accounts with Wells Fargo bank.

28. The Wells Fargo bank records for checking account XXXXXX2019 also show a $1,009.88 transaction taking place at the Walmart Super Center, store #2159 in Olean, NY on 2/2/2021. Security video footage from that Walmart shows an individual matching the description of STEVENS entering the Walmart at 1118 on 2/2/2021. Transaction records from Walmart store #2159 show the debit card connected to STEVENS' Wells Fargo checking account XXXXXX2019 making a $1,009.88 purchase at the Walmart Super Center in Olean, NY at 1125 on 2/2/2021. The purchase was two fillable debit gift cards for $500 each with a transaction fee of $4.94 for each card.

29. ODJFS records also included the SSN attributed to M.M. who received UI benefits in Ohio. Commercial database checks show this SSN to be connected to M.M., with a DOB of XX/XX/1954, an address in Pennsylvania, and a specific telephone number. The commercial database record for M.M. does not show any address history in Ohio. U.S. Postal Service records show that M.M. is currently receiving mail at an address in Pennsylvania, as well as showing no forwarding address on file. As mentioned, Wells Fargo bank records for STEVENS' checking account XXXXXX2019 show a deposit on 2/18/2021 from ODJFS in the amount of $5,586.00. These Wells Fargo records also show a transaction at a 7-Eleven Convenience Store, #35201 in Olean, NY on the debit card attached to checking account XXXXXX2019 in the amount of $504.95 on 2/18/2021.

30. Records from the 7-Eleven Convenience Store, #35201 on 2/18/2021 confirm that the debit card connected to STEVENS' checking account XXXXXX2019 purchased a Visa Vanilla Gift Card in the amount of $500 with a transaction fee of $4.95. Video records from 7-Eleven store #35201 at that date and time show an individual matching the description of STEVENS making the previously described gift card purchase.

31. These records show that STEVENS fraudulently provided to ODJFS personally identifiable information, including SSNs, of other individuals without their knowledge or consent with the intent to receive UI benefits in their names. STEVENS was living in Olean, NY when he conducted this fraud and utilized the internet to transmit other

individual's data across state lines to the ODJFS servers in Virginia in furtherance of his scheme.

## III. CONCLUSION

32. Based on the foregoing, I respectfully submit that I have probable cause to believe that **JOSEPH STEVENS** has violated Title 18, United States Code, Sections 641 and 1343, and Title 42, United States Code, Section 408(a)(8).

_____
Michael Nunziato, Special Agent
U.S. Dept. of Labor, Office of Inspector General

Sworn and subscribed telephonically
this 19th day of May 2021.

_____
HON. MICHAEL J. ROEMER
United States Magistrate Judge